# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

Debra Bailey-Vassoff,

          Plaintiff,        Case No. 17-cv-12090

v.                                 Judith E. Levy
                                 United States District Judge
Nancy A. Berryhill, Acting
Commissioner Social Security     Mag. Judge Mona K. Majzoub
Administration,

          Defendant.

_____/

## ORDER ADOPTING THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION [18]

On May 2, 2018, Magistrate Judge Mona K. Majzoub issued a Report and Recommendation ("R & R") recommending the Court deny plaintiff's motion for summary judgment (Dkt. 15), grant defendant's motion for summary judgment (Dkt. 16), and affirm the Commissioner's decision to deny plaintiff benefits under the Social Security Act. (Dkt. 18.)

On May 15, 2018, plaintiff filed three timely objections to the R & R under Fed. R. Civ. P. 72(b)(2) and E.D. Mich. L.R. 72(d). Plaintiff first

objects to the Magistrate Judge's finding that her treating physician Dr. Jill Noelle Fenske's opinion constituted an opinion on the ultimate issue, and was therefore not entitled to controlling weight. (Dkt. 19 at 13.) Next, she objects to the Magistrate Judge's finding that the ALJ adequately articulated the reasons for the weight assigned to Dr. Fenske's opinion. (*Id.*) Third, she objects to the Magistrate Judge's finding that the ALJ appropriately gave great weight to the opinion of a non-examining, non-treating, state agency physician, whose opinion was based on reviewing a portion of the medical evidence of record. (*Id.*)

Because plaintiff's objections are without merit, the R & R is adopted, plaintiff's motion for summary judgment is denied, and defendant's motion for summary judgment is granted.

**I.     Background**

The Court adopts by reference the background set forth in the R & R, having reviewed it and found it to be accurate and sufficiently thorough. (Dkt. 18 at 2.)

**Legal Standard**

Under Eastern District of Michigan Local Rule 72.1(d), objections to a Magistrate Judge's ruling must:

(A) specify the part of the order, proposed findings, recommendations, or report to which a person objects; and
(B) state the basis for the objection."

E.D. Mich. L.R. 72.1(d)(1).

The Court reviews *de novo* those parts of the R & R to which a party has timely objected, and may accept, reject, or modify the recommended disposition, receive further evidence, or return the matter to the Magistrate Judge with instructions. Fed. R. Civ. P. 72(b)(3).

The Court's review of a determination of the Administrative Law Judge ("ALJ") "is limited to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards." *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234, 241 (6th Cir. 2007). "Substantial evidence is less than a preponderance but more than a scintilla; it refers to relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014) (citing *Rogers*, 486 F.3d at 241). In deciding whether to affirm the ALJ's decision, "it is not necessary that this court agree with the Commissioner's finding, as long as it is substantially supported in the record." *Rogers*, 486 F.3d at 241.

II. Analysis

3

**A. Objection No. 1**

Plaintiff first objects to the Magistrate Judge's finding that plaintiff's treating physician Dr. Fenske's opinion in the March 4, 2016 questionnaire (the "March 4, 2016 Questionnaire") constituted an opinion on the ultimate issue, and was therefore not entitled to controlling weight. (Dkt. 19 at 13.) Plaintiff argues that Dr. Fenske did not opine on whether plaintiff was "disabled" using that exact term, and therefore her March 4, 2016 Questionnaire should have been entitled to controlling weight. (*Id.*)

Plaintiff is correct that the March 4, 2016 Questionnaire did not specifically state whether, in Dr. Fenske's opinion, plaintiff is "disabled." Rather, March 4, 2016 Questionnaire is a form document entitled "Questionnaire," which contained two questions. The first states:

1. In your opinion do the residual of Debra Elaine Bailey-Vassoff's degenerative disc disease, broken tail bone, diabetes with neuropathy of the arms and legs, hypertension, calcium buildup in the kidneys, trigger finger carpal tunnel, asthma, retinopathy, and restless leg syndrome constitute a *severe medical impairment? (Assume a "severe" medical impairment is defined as ANY impairment that causes more than minimal limitation on one's ability to perform basic work activities.

(Dkt. 13-8 at 119.) The questionnaire then has a slot for "Yes" or "No", and below, states "Explain if necessary." Dr. Fenske signed her name under "Yes" and left the portion for "Explain if necessary" blank. (*Id.*)

The second question on the March 4, 2016 Questionnaire states:

> 2. In your opinion can Debra Elaine Bailey-Vassoff *sustain working a simple sedentary job on a 40 hour a week basis? Assume sedentary is described as follows:
> Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, small tools. Although a sedentary job is defines as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. By its very nature, work performed primarily in a seated position entails no significant stooping. Most unskilled sedentary jobs require good use of the hands and fingers for repetitive hand finger actions.
> "Occasionally" means occurring from very little up to one third of the time. Since being on one's feet is required "occasionally" at the sedentary level of exertion, periods of standing or walking should generally total no more than about 2 hours of an 8 hour work day, and sitting should generally total approximately 6 hours of an 8 hour workday.

(*Id.*) The March 4, 2016 Questionnaire then has a slot for "Yes," under which states "(Able to sustain 40 hours a week)" and "No," under which states "(not capable of sustaining working 40 hours a week)". It

5

also has an open space after "Explain if necessary." Dr. Fenske signed her name under "No (not capable of sustaining working 40 hours a week," and again left the "Explain if necessary" portion blank.[1]

The determination of whether a person is "disabled" under the Social Security Act is reserved to the Commissioner, and not to plaintiff's treating doctor. (Social Security Ruling 96-5p.) Plaintiff acknowledges this in her objection. (Dkt. 19 at 18.) However, plaintiff argues, this rule applies to situations where the treating physician "simply opines that the claimant is 'totally disabled' or 'disabled and unable to work.'" (*Id.*)

While it is true that Dr. Fenske did not opine in the March 4, 2016 Questionnaire that plaintiff was "disabled," "totally disabled," or "unable to work," this is not the main reason the ALJ declined to give the March 4, 2016 Questionnaire significant weight. The ALJ rejected Dr. Fenske's opinions in the March 4, 2016 Questionnaire because, "the objective evidence, prior inconsistent reports, and activities of daily living do not support a finding of disability." (Dkt. 13-2 at 24.) There is substantial

---

[1] The form also defines "Severe" as, "medical impairment defined as any impairment that causes more than minimal limitation on one's ability to perform basic work activities. It also defines "Sustain" as, "Assume sustain would require not calling in sick more than 2 times a month." (*Id.*)

objective evidence and history of daily living activities to support the ALJ's finding that the March 4, 2016 Questionnaire is inconsistent with plaintiff's previous treatment record.

A brief summary of plaintiff's treatment history with Dr. Fenske for issues related to her application for benefits is as follows:

- On March 22, 2014, plaintiff visited Dr. Fenske for hives, but at the time of her appointment, reported that she felt "well overall." (Dkt. 13-7 at 71.)

- On June 1, 2014, plaintiff visited Dr. Fenske to discuss results of a spirometry with bronchodilator, which "did not show any chronic lung disease." (Dkt. 13-7 at 75.) Dr. Fenske noted plaintiff's diabetes and blood sugar "are under better control." (*Id*. at 76.)

- On June 16, 2014, Dr. Fenske ordered a cardiac EKG and noted "the baseline resting EKG was normal. The stress EKG response was normal." (Dkt. 13-7 at 11.)

- On February 20, 2015, plaintiff followed up with Dr. Fenske after a stent placement and reported fatigue, "but otherwise no symptoms or complications." (Dkt. 13-8 at 36.)

- On May 18, 2015, plaintiff visited Dr. Fenske after continuing to experience fatigue from a stent placement. Dr. Fenske reported her "diabetes is coming under better control." Plaintiff reported that her use of Tylenol 3 for her back pain "has helped." (Dkt. 13-8 at 70.)

- On June 22- 24, 2015, plaintiff presented to the emergency department at University of Michigan Health System and underwent cardiac catheterization procedure and was found to have a "subtotal occlusion of stent in the RCA and occluded stent in the ostial PDA. She had implantation of a drug-eluting stent to the distal RCA and a successful PTCA of the ostial PDA stent thrombosis." (Dkt. 13-8 at 106.) In a follow-up cardiology appointment in July 2015, she denied any chest discomfort or other symptoms, and stated that "5 days a week she has been walking back and forth to her mailbox which is 1 mile round trip." (Dkt. 13-8 at 102.) Plaintiff also reported to Dr. Fenske on July 7, 2015 that "things are going well." (*Id.* at 106.)

- On August 17, 2015, Dr. Fenske's treatment notes state that plaintiff "is feeling better with no chest pain or dyspnea episodes." (Dkt. 13-2 at 47.) She also stated, as it relates to plaintiff's diabetes, "[h]er blood sugars are still running high but trending in an improved direction… She is not having any hypoglycemia." (*Id.*) Her objective findings from the visit were that "patient is alert and oriented, in no acute distress. Heart is regular rate and rhythm with no murmurs, rubs or gallops. Lungs are clear to auscultation bilaterally with a normal respiratory effort."

- At cardiac rehabilitation in August 2015, plaintiff exercised on the Nustep for 30 minutes and upright bike for 10 minutes on multiple visits. (Dkt. 13-2 at 52-53.)

- On November 11, 2015, Dr. Fenske reported that plaintiff "did do cardiac rehabilitation," and that "[s]he is not having any chest pain or dyspnea." (Dkt. 13-2 at 63.) She again reported that plaintiff was "alert and oriented, in no acute distress."

(*Id.* at 64.) She also reported, "[h]eart is regular rate and rhythm with no murmurs, rubs or gallops. Lungs are clear to auscultation bilaterally with a normal respiratory effort." (*Id.*)

- On February 2, 2016, Dr. Fenske's records state that plaintiff's last A1c was elevated to 9.9 but "[s]ince then, her blood sugar has come under better control, generally in the low 100s and occasionally in the high 100s." (*Id.* at 82.) As to plaintiff's depression, Dr. Fenske noted that plaintiff "feels her depression is under good control." (*Id.*)

- On March 4, 2016 Dr. Fenske completed the Questionnaire at issue.

The ALJ analyzed this treatment record when determining that the March 4, 2016 Questionnaire is inconsistent with Dr. Fenske and other treating doctors' previous record, with objective evidence, and with plaintiff's activities of daily living. He noted portions of the medical records where plaintiff reported she was able to take her niece on a trip, clean the house, and take a toilet apart and put it back together. (Dkt. 13-2 at 22.) He also noted portions of the medical record where plaintiff was staying busy with household chores, gardening and grocery shopping. (*Id.* at 23.) Plaintiff also exercised in her cardiac rehabilitation sessions, and reported she was exercising 40 minutes, three times a week. (*Id.*) Thus, there is substantial evidence to support the ALJ's

9

determination that the March 4, 2016 Questionnaire is inconsistent with plaintiff's previous treatment record, with objective evidence, and with her activities of daily living. Thus, the ALJ's determination in this regard will not be disturbed.

**B. Objection 2**

Plaintiff's second objection is to the Magistrate Judge's finding that the ALJ adequately articulated the reasons for the weight assigned to Dr. Fenske's opinion in the March 4, 2016 Questionnaire. Plaintiff argues that if Dr. Fenske's opinion in the March 4, 2016 Questionnaire was not entitled to controlling weight, the ALJ was required to articulate specific reasons for the weight given to the opinion which, plaintiff argues, the ALJ did not do. (Dkt. 19 at 19-21.)

Generally, ALJs give controlling weight to medical opinions from treating sources regarding the nature and severity of the claimant's condition. 20 C.F.R. §404.1527(c)(2) (2018). However, when the ALJ does not give the treating source's opinion controlling weight, the ALJ must "give good reasons" why not. *Id*. There are six regulatory factors to consider in weighing medical opinions: (1) length of the treatment relationship and frequency of examination; (2) the nature and extent of

10

the treatment relationship; (3) supportability of the opinion; (4) consistency of the opinion with the record as a whole; (5) specialization of the treating source; and (6) other factors. 20 C.F.R. §§ 404.1527(c)(2)-(6) (2018), 416.927(c)(2)-(6) (2018). There is no *per se* rule requiring an articulation of each of the six regulatory factors.

As long as the ALJ's decision "fully describe[s] the reasoning for discounting [the treating physician's] opinion," it is sufficient. *Tilley v. Comm'r of Soc. Sec.*, 394 F. App'x 216, 222 (6th Cir. 2010); *and see Francis v. Comm'r of Soc. Sec.*, 414 F. App'x 802, 804-05 (6th Cir. 2011) (explaining the regulations require only "good reasons for the weight given to the treating source's opinion[,] not an exhaustive factor-by-factor analysis."). The reasons must be "supported by the evidence in the case record" and "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011). The ALJ is not required to expressly cite every record individually. *See Bailey v. Comm'r of Soc. Sec.*, 413 F. App'x 853, 855 (6th Cir. 2011).

On review, the Court is to "accord the ALJ's determinations of credibility great weight and deference." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469 at 476 (6th Cir. 2003). "[I]f substantial evidence supports the ALJ's decision, [this Court] defer[s] to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).

The ALJ gave Dr. Fenske's March 4, 2016 Questionnaire limited weight because, as set forth above, "the objective evidence, prior inconsistent reports, and activities of daily living do not support a finding of disability." (Dkt. 13-2 at 24.) Plaintiff argues that the "ALJ did discuss perceived inconsistencies in the medical evidence earlier in the opinion, but failed to explain how those perceived inconsistencies undermined Dr. Fenske's opinion." (Dkt. 19 at 20.) This argument not persuasive. It is the very fact of the inconsistencies, which the ALJ discusses in detail, which undermine Dr. Fenske's March 4, 2016 Questionnaire. Accordingly, as set forth above, substantial evidence supports the ALJ's determination that the objective evidence, inconsistent reports, and activities of plaintiff's daily living are inconsistent with Dr. Fenske's March 4, 2016

12

Questionnaire. The ALJ's determination and evaluation in coming to his conclusion is sufficiently specific and it will not be disturbed.

**3. Objection 3**

Plaintiff's third objection is to the Magistrate Judge's finding that the ALJ appropriately gave great weight to the opinion of a non-examining, non-treating, state agency physician, whose opinion was based on reviewing a portion of the medical evidence of record. (*Id.*) The ALJ's opinion states:

> The State agency medical consultant's assessment is given great weight with respect to Claimant's residual functional capacity because it is amply supported by the evidence cited by the consultant in his explanation. Furthermore, new records submitted at the hearing level do not persuade a need for any greater limitations beyond than [sic] those identified by the consultant. Rather, as explained above, the objective evidence and Claimant's activities justify a conclusion that Claimant had [sic] perform light work with frequent postural activities and no concentrated exposure to vibrations.

(Dkt. 13-2 at 24.)

Generally, the ALJ assigns more weight to the opinion of a source who has examined the plaintiff than to one who has not examined the plaintiff. 20 C.F.R. §404.1527(c)(1). The ALJ did not do so here when he

gave Dr. Fenske's March 4, 2016 Questionnaire limited weight, but gave the state agency medical consultant Dr. Quan Nguyen's December 8, 2014 opinion (the "December 8, 2014 Determination") great weight.

Federal or state agency medical consultants are considered to be qualified experts in Social Security disability evaluation. 20 C.F.R. §404.1513a(b)(1). However, although ALJ's must consider medical evidence from federal or state agency medical consultants, they are not required to adopt their findings. *Id*. The most important factors in determining the weight to give federal or state agency consultant opinions are their supportability and consistency. 20 C.F.R. §404.1520c.

Under some circumstances, an ALJ may assign greater weight to a state agency consultant's opinion than to that of a treating or examining source. *Miller v. Comm'r of Soc. Sec.*, 811 F.3d 825, 834 (6th Cir. 2016). One circumstance where this approach is appropriate is "where the non-examining source's opinion is based on a review of the complete case record." *Id*. Here, the non-examining reviewing source, Dr. Quan Nguyen, signed the December 8, 2014 Determination on December 8, 2014 but did not review the complete case record. Plaintiff provided the ALJ with additional medical records from 2014-2016 at the hearing. (Dkt.

13-2 at 24.) Where the non-examining source did not review a complete case record, the Sixth Circuit "requires some indication that the ALJ at least considered these facts before giving greater weight to an opinion from the non-examining source." *Miller*, 811 F.3d at 834 (*and see Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 409 (6th Cir. 2009)).

The ALJ carefully considered all of plaintiff's medical records, including those that were submitted at the hearing. (*See generally* Dkt. 13-2 at 17-23.) He noted that the December 8, 2014 Determination was "amply supported" with comparison to the objective evidence and plaintiff's activities, which the ALJ analyzed along with the entire record as a whole. (*Id.* at 24.) For these reasons, the ALJ's determination to give the December 8, 2014 Determination great weight is supported by substantial evidence and will not be disturbed.

### III. Conclusion

For the reasons set forth above, the Court ADOPTS the Magistrate Judge's Report and Recommendation (Dkt. 18), plaintiff's motion for summary judgment is DENIED (Dkt. 15), defendant's motion for summary judgment is GRANTED (Dkt. 16), and the ALJ's decision is AFFIRMED.

IT IS SO ORDERED.

Dated: September 10, 2018　　　s/Judith E. Levy
Ann Arbor, Michigan　　　　　　JUDITH E. LEVY
　　　　　　　　　　　　　　　United States District Judge

## **CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on September 10, 2018.

　　　　　　　　　　　　　　　s/Shawna Burns
　　　　　　　　　　　　　　　SHAWNA BURNS
　　　　　　　　　　　　　　　Case Manager